MAY TERM, 1881, No. 117.                    MAY 16TH, 1881.

## Harris *versus* Nowviock *et al.*

Where in an action of ejectment brought in 1876 to recover a tract of land called the "English burying-ground" within a town, plaintiff proved that the founder of the town in whom the land had been vested died in 1791, without in his will disposing of it specifically, and that on a plan of the town in the surveyor's office, recorded in the office of the recorder of deeds, and acknowledged in 1796 by three persons who were executors of the founder to be a true plan, and who agreed that it should govern in all cases of dispute that might arise between them, their heirs, and assigns, and the inhabitants, this tract was designated as the "English burying-ground," and further proved that it had been used from a period not later than 1807 down to 1857 as a burying-ground, but that since the latter date the bodies had been removed and the tract used for other purposes: *Held*, that there was no evidence to go to a jury from which they could find that the founder had dedicated the tract for the purposes of a burying-ground, and *Held*, further, that there was no evidence upon which the plaintiff, as an heir of the founder, was entitled to recover.

ERROR to the Court of Common Pleas of *Dauphin County.*

Ejectment, commenced May 17th, 1876, by William Harris against Louis Nowviock, W. Wayne Vogdes, and John Beatty, for one-twelfth of a tract of land in the city of Harrisburg.

It was admitted that John Harris, the founder of Harrisburg, who died in 1791, was the owner of the land in question. The father of the plaintiff below, and the plaintiff in error, Robert Harris, was a son of John Harris, the founder, and a devisee and one of the executors named in his will.

The land in dispute was what, for many years prior to 1856–57, had been known as the "English burying-ground."

Upon the trial of the case, the plaintiff offered in evidence the will of John Harris, dated May 25th, 1790, probated in August, 1791, showing no disposition of the said land, and appointing as executors Robert Harris, John A. Hanna, and William Maclay. In his will the testator willed and desired that the town of Harrisburg "be, and remain, according to the plan thereof, laid down and signed by the said commissioners," undiminished and confirmed forever; devised a lot numbered in the general plan of the town to his son, Robert Harris, in fee; as to the residue of the town "as laid out by the aforesaid commissioners," "except the lots before devised, or in my lifetime sold and conveyed," and an additional described piece of land he directed and empowered his executors, and the survivor of them, "to sell and convey in fee simple or for life, or for any less estate, or to let or rent for years, for life, or for any less estate, . . . and to collect the groundrents in arrear, growing due on any of the lots in said town;" devised and bequeathed the proceeds of the sale of

the land and arrears of groundrent to his children, including Robert Harris, share and share alike, and ordered and directed that the legacies to Robert Harris be in bar of all claims Robert might have against his estate, particularly an obligation for £250, which was to be cancelled and delivered up, and in case of Robert's refusal so to do, he revoked all legacies.

The plaintiff also offered in evidence a plan of the town of Harrisburg on file in the surveyor's office, and recorded in the office of the recorder of deeds, showing that the land in dispute was embraced within the limits of a plot marked "E," designated on the plan as the "English burying-ground." Upon this plan was indorsed the following:

"We do acknowledge and attest that the within is a just and true plan of the borough of Harrisburg, and we do hereby agree that the same shall govern in all cases of dispute that may arise between us, our heirs and assigns, and the inhabitants of the borough of Harrisburg, forever.

"Witness our hands and seals, November 21st, 1796.

"ROBERT HARRIS,    [SEAL.]
"JOHN A. HANNA,    [SEAL.]
"WM. MACLAY."    [SEAL.]

It was acknowledged the same day, and recorded June 16th, 1823.

David Harris, in his deposition taken in 1877, testified:

"I know the land in controversy. It is called the English graveyard. I have known this ground for seventy years,— as long as I could know anything. When I first knew it it was used as a graveyard. . . . It is not now used as a burying-ground. The remains of all those who were interred there were taken to the Harrisburg cemetery." . . . .

Other witnesses for the plaintiff testified that the land had been used as a burying-ground down to 1857, but was, at the time of the trial, fenced in, and had a stone-cutter's shop and other buildings on it, and that no portion was then used as a burying-ground. One of the witnesses testified to having done work there at the time the bodies were removed, for the trustees of the English Presbyterian church.

The defendants produced no testimony.

The plaintiff presented a number of points asking the Court to charge, *inter alia:*

2. That the original plan was evidence of a dedication by John Harris of the land in controversy as and for the "English burying-ground," and being supplemented by proof that the same had been used for seventy years as a burial-ground, was, in the absence of proof to the contrary, conclusive that the said land was thus dedicated.

6. That if the jury find under the evidence that the land in controversy was dedicated by John Harris for a burying-ground for the English-speaking citizens or inhabitants of Harrisburg, and that the same was used as such " English burying-ground " for. upwards of seventy years, and that the remains of the dead formerly buried there have since been removed, and that the said ground had been, at the time this suit was brought, abandoned for burial purposes, and was used by defendants for other purposes, the title and right to the possession of the ground was in the lineal descendants of John Harris.

The questions raised by these points were covered by the main charge.

The Court, HENDERSON, J., charged, *inter alia*, as follows:

" We start, then, with the fee in John Harris. What else have we ? It is not pretended that this property, by description, was devised by him. The theory of the plaintiffs seems to be that he died intestate as to this property. Although it is argued that even if it did pass to the executors under the clause of the will directing it to be sold, still the devisees entitled to the proceeds may elect to take it as real estate. We prefer to meet the question at the threshold. The plaintiffs are impressed, if not embarrassed, by the absence of possession for so long a time ; and hence we find their explanation in the allegation that the property was dedicated by him through whom they claim to the special use of a ' burying-ground.' We have looked through the evidence in vain to find any act of dedication by John Harris. The ancient plan of the town of Harrisburg bears on its face this piece of ground marked as the ' English burying-ground,' but where is the evidence that this was the act or done by the direction of John Harris ? It is sufficient, we confess, to indicate the purpose for which it was used at the time of the acknowledgment of the draft by the persons named, and it may be conceded that these persons were his executors. It does not, however, appear, that the same was made in their character as such. What then, whether as executors or otherwise ? How does this act of theirs tend to show a dedication by him any more than a grant or gift ? It is evidence that it is a true plan of the borough, and it may be conclusive in all disputes between the parties to it and the inhabitants of the borough. That is, it may indicate lines and determine locations. But beyond this there can be no pretence that it can abridge or enlarge titles or rights of property. It may show, and we think it does, that the right of possession was not in them or in the heirs of John Harris, deceased ; but it does not determine the

[Harris v. Nowviock *et al.*]

estate in possession or limit it to a mere easement or special use. We think it does not operate on the title at all. The fact then is that the possession has been out of plaintiffs and those through whom they claim for eighty years and upwards. The plaintiffs' claim to possession now is not strengthened in the least by the mere fact that up until recently, if you please, the ground was used as a graveyard, which is now abandoned. For it cannot be that this indication of the 'English burying-ground' of itself on the ancient plan is evidence of a dedication by the founder of the town, or that the fee remained in him or his heirs. As this case now stands I incline to the opinion that the evidence tends to show that John Harris parted with the possession in his lifetime. It may have been an absolute gift accompanied by possession, without restriction or limitation to a special use ; the act of a broad-gauged, generous man, the founder of a city, who knew well the capacity and growth of his people, and made no attempt to hedge them in with graveyards. It is useless to talk now of the fee remaining in him for the benefit of his heirs-at-law, in the face of his well-considered will, after a possession adverse to anything like a claim of ownership for a period of over eighty years. Nor is this the ordinary case of an easement, public or private, where, from non-user or abandonment, the possession reverts to the owner of the fee. And yet whilst it may be admitted that the use of a piece of ground is not inconsistent with a dedication to this purpose, we do most earnestly hold that against those in possession such dedication is not to be presumed or inferred from the use. Then have we anything more in this case? The words upon the plan can indicate nothing more than the marks upon the ground."

After answering the various points presented in accordance with the foregoing general charge, the Court said :

" And now, upon the whole case, I am clearly of the opinion that the plaintiffs have made out no case for the jury, and must therefore direct you to find in favor of the defendants."

Plaintiff excepted to the charge, and to the answers to the points.

May 5th, 1880, the jury found a verdict for the defendants, upon which judgment was entered January 21st, 1881.

The plaintiff took a writ of error, assigning for error the charge and the answers of the Court.

*Hamilton Alricks* and *Levi B. Alricks* for plaintiff in error. The Court having taken the case from the jury, all the

assignments of error will be treated together. It was admitted the fee was in John Harris, the founder. He died in 1791, never having parted with it. As he died intestate as to this land, the fee became vested in his descendants. How, then, could mere possession "not inconsistent with the fee being in them," divert their title? To constitute a valid title by possession twenty-one years hostile possession was necessary, not to be made out by inference, but by clear and positive proof: Rung *v.* Shoneberger, 2 Watts, 23; Hawk *v.* Senseman, 6 S. & R., 21; Mercer *v.* Watson, 1 Watts, 330; Comegys *v.* Carley, 3 Watts, 280; Union Canal Company *v.* Young, 1 Wharton, 426; Sailor *v.* Hertzogg, 2 Barr, 184; Moore *v.* Small, 9 Barr, 196.

The learned judge below presumed, without evidence and without the assistance of a jury, that defendants held title by adverse possession: Mobley *v.* Buner, 9 P. F. Smith, 481; West *v.* Pine, 4 W. C. C. R., 691.

No particular form of words is necessary to establish a dedication. The assent of the owner and the use of the premises are sufficient, and estop him from revoking it while in use: Commonwealth *v.* Alburger, 1 Wh., 469; Morgan *v.* Railroad Company, 6 Otto, 716; New Orleans *v.* United States, 10 Peters, 662; McConnell *v.* The Town of Lexington, 12 Wheaton, 582; Cincinnati *v.* Lessee of White, 6 Peters, 431; Schenley *v.* Commonwealth, 12 Casey, 29; Klinkener *v.* School Directors, 1 Jones, 444; Birmingham *v.* Anderson, 12 Wr., 253; Hunter *v.* Trustees, 6 Hill, 407; see particularly Kirk *v.* King, 3 Barr, 436.

*Gilbert & McPherson* and *Fleming & McCarrell* for defendants in error.

No particular form of words is necessary to establish a dedication, but whatever the form of words may be, or whatever the acts of the parties, there must be some connection shown between the words or the acts alleged to be those of dedication and the person whose conduct is thus sought to be explained. Nothing relied on by the plaintiff was shown to have proceeded from John Harris.

PER CURIAM: We concur with the learned judge of the Court below that there was no evidence of the dedication of the land in dispute to a charitable use as a burial-ground, certainly none by John Harris in his life. The plan in evidence was made by his executors. They had no power under his will to give away any portion of his land. The plan, then, was only evidence that it had been sold to some person or persons by whom it had been given [and] or dedi-

[Commonwealth *v.* The Texas and Pacific Railway Co.]

cated to such a purpose. There was some testimony that it had been under the control of the English Presbyterian Congregation. They buried there, and the trustees of that church paid for the removal of the dead.

Judgment affirmed.